Good morning, may it please the court. I'd like to reserve three minutes for rebuttal. You have whatever time is left on the camera when you stop talking. Thank you. Mr. Leon-Paz's prior order removal, whether seen by the facts as shown in our briefs or as seen by the government's facts, which are a more constricted set of facts, whichever way you look at them, they do not comport with due process, and for that reason, the government should not be allowed to use that in the criminal prosecution for illegal reentry against Mr. Leon-Paz. May I ask you some clarifying questions, and then I have sort of an overall question. I want to be sure I understand the theory, because I'm not sure I do. If I understand your theory correctly, it is that you're entitled to get out of your waiver of appeal because the I.J. did not advise Leon-Paz that he was eligible for 212C relief. And that was wrong because the I.J. was impermissibly applying I.R.E.A. to his 1995 burglary conviction, retroactively. Correct. And so it was not a knowing, intelligent, voluntary waiver. Okay. So that violated due process. But we, under our law, we know he was not actually eligible for deportation at all on account of the 1985, 1990, October 1995, burglary conviction. If it was, if that was his only offense at the time, correct. And he was not eligible for 212C relief on that account. Correct. Okay. So what you want us to do is to hold that even though nothing in the record before the I.J. suggests it at all, nevertheless, he could reasonably have expected his plea to the October 1985 offense to have made him both deportable and eligible for 212C relief Because he knew, although nobody else did, he knew that he had also been convicted of burglary a few months before. And that was a crime of moral turpitude under the law at the time. Is that correct? Well, Your Honor, depending on how you look at it, I know in the notice to appear, the only information given by the government to the immigration judge was the 197 Excuse me, the 95 conviction for burglary. As far as I can tell, there's nothing in the record. And it may not make any difference. I just want to be sure I understand. There's nothing in the record about the prior 1995 burglary conviction. Correct. And I think, Your Honor, I guess the argument is that an immigration judge seeing that the conviction happened before ADPA or IHRA, IHRA was passed, would see, you know, the settled expectations are no immigration consequences. That's true, but the IJ only saw the October 1985 conviction. Correct. All right. So he would have known, had he been prescient and realized that St. Cyr would come down, he would have known that the guy wasn't deportable, period. And, Your Honor – Correct? Yes, except to be – But that would have been the correct result of that immigration proceeding. Right? He was not deportable, period. Under the – right. Under the notice to appear. And he didn't speak up and say, wait a minute, I am deportable, actually, but I'm deportable for a reason that you don't – that the government didn't charge me with. I'm actually deportable because I had two burglary convictions, not just one, and I'm therefore eligible for 212C release – relief. As to his – as to the correct set of facts at the time, yes. And so your position is that now, one step removed from a straight-up view, we go back and say, okay, in his mind it was reasonably, objectively possible for him to have suspected when he pled guilty to burglary in October that he knew he had two burglary convictions, so if he was ever charged with being deportable, he knew he was deportable, but that he had the possibility of a 212C relief, right? And the – Okay. Is that correct? Yes, Your Honor. Would you tell me your best case for the proposition that at this point we go back and make that determination? The determination as to – That your waiver was not voluntary, even though your client knew he was deportable and didn't say anything about it, and that the underlying conviction, therefore, goes – underlying, excuse me, order of deportation goes away. Your Honor, when Mr. Leon Paz went to the immigration judge at the hearing, he was advised by the judge that he had no relief available. I know. He wasn't even deportable, right? And under the notice to appear, if you just look at that one case, he would not be deportable. Yes. Although, well, Naira Aira did something interesting because the aggravated felony definition is retroactive, so I guess Aira Aira would have made him deportable but would have kept 212C eligibility for him. And I think our – That's a change. So you're now saying that 1985 burglary conviction actually did make him deportable and it wasn't retroactively impermissible to have said he was deportable. Yeah. I guess under the statute of the government – Well, you should be part of the law or the whole law. That's the problem. Well, Aira Aira made retroactive definition of aggravated felony, and that was clear in the language of the statute. And so the judge has to apply that retroactively. The immigration judge has to. But the section getting rid of 212C was not retroactive. And based on that, that would still be available even though, like I said, it's kind of strange because one section of the law is retroactive and that made him deportable but with 212C relief. And this, again, is just a response to the government's argument. Well, I just want your theories, what I want, because it's confusing. All right. Now I have a completely different question, assuming that we now understand what your theory is. Do you have to show prejudice or not? Your Honor, I think Mr. Leonpass has to show prejudice, but based on the fact that it's a 212C waiver as opposed to a 212H waiver. In immigration law, a 212C waiver is much easier to get than a 212H. A 212H requires a showing of extreme hardship. A 212C is most like it's discretion. So it's a weighing of facts. And for that reason, I think we made a profit to the district court with all the facts that show that Mr. Leonpass would be someone who would be able to get a 212C. And St. Cyr has statistics that say 51.5 percent of people who applied between 89 and 95 for this waiver received it, over 10,000 aliens. And that was when the definition of aggravated felony, people who were deportable for offenses, was much smaller, meaning they had usually worse crimes than they would have now, most likely offenses that are against a person, unlike the property offenses that Mr. Leonpass had. I would say that I don't think the Court necessarily ---- Roberts. Can I ask you one question? We have not too much time left, but I just have a quick one. Forgetting the prior burglaries, and let's just concentrate on the one at hand, I take it, as it turns out, he was misadvised regarding the one at hand even. Was he not? Yes, he was misadvised. That's one of your ---- I take it that's one of your points, that forgetting your other point, that even on the one at hand, he's misadvised. Is that true? Yes, Your Honor. All right. And we've covered that question. Thank you. Will you run the government? May it please the Court. My name is Bruce Ferg. I'm Assistant United States Attorney here on behalf of the government. I think that the crucial question is essentially what Judge Reimer has focused on, and that is, what was the defendant's reasonable expectation or reasonable understanding of the law at the time that he pled guilty to that first-degree burglary in 1995? Well, if he hadn't said that he had a whole string of convictions which made him even ---- which made him deportable, which his 1985 plea did not, but if he ever were charged with being deportable, he could have expected 212C relief eligibility. I guess that's his argument. Well, I think that just the way that you've expressed the question shows the problem with him, and that is that this is all purely hypothetical. What if they come around sometime later and change the law and put me in a different situation than I'm actually in now? As for the question of whether he was actually deportable, because of the conjunction of the two burglaries that could be described as crimes of moral turpitude, we're not even sure that that's true. There are certain qualifications to the C&T classification, including whether or not, for example, that the two offenses were actually committed as part of one ongoing scheme. And because this was never raised until an objection to the magistrate's report, we have not had an opportunity to fully examine those facts or to argue them, which is really why this whole theory ought to be considered weighed. Well, what about the second one taken by itself? The one of the first three? The one that he was actually charged with. Right. As far as I can tell. And when he pleads, he knows two things. He knows, one, I'm not an aggravated felon. Exactly. And, two, if I am an aggravated felon, I'm entitled to 212 relief. That's what he knows at the time. Correct? That's right. Okay. So. Again. What happens by the time. So it turns out, lo and behold, they seek to remove him on the basis of that felony. And they say, we've got you in a double whammy. A, we've made you an aggravated felon. And B, we've taken away 212 relief. Right? That's correct. Why isn't that very much like St. Cyr? Because the situation, again, that St. Cyr was talking about was, what did the person know or what were his reasonable expectations? What rights had vested at the time of the change of plea? What did he understand at that time? And at that time, the law said, you are not an aggravated felon. You only are being imposed a four-year term, so you're not an aggravated felon. But he's really sophisticated. And he knows that the government is always playing fun and games with who an aggravated felon is. Okay? He knows that they're always flipping things around, as indeed they are and did. Correct? Correct. So he says to himself, well, they may decide that this is an aggravated felony. But that doesn't matter, because I have 212 relief anyway. Because if it's an aggravated felony, it's not the kind that 212 zaps me on, because it's only a four-year aggravated felony and not a five-year. He says that to himself, because he's very sophisticated. Just like St. Cyr was very sophisticated and said to himself, well, you know. No, the difference, there was a significant difference, and that difference between this kind of a situation and St. Cyr is exactly what this Court dealt with in Velasco, Medina. Not quite exactly, though. There were additional factors in Velasco, Medina. He had additional notice because of the timing of his change of plea. But the first holding. He had already lost 212 relief under Velasco. He had already lost 212 relief if he was an aggravated felon. Correct? But that was a secondary holding. The first thing that this Court said, and I'm quoting from Page. I know what it said first, but it held two things. And I can be corrected on my understanding, but I don't think I can call either of those dicta and unimportant. Each one was a pillar on which it stood. I would suggest that there are actually two independent grounds, each sufficient. Because there was the additional notice that Mr. Velasco, Medina had, because his conviction occurred after EDPA was passed in 96, whereas our defendant was in 95. But the initial statement, and this is very flat, is that Velasco, Medina was never eligible for discretionary relief under 212C because his guilty plea did not render him deportable, and therefore, unlike St. Cyr, he never possessed vested rights acquired under existing law. That's the whole – that's the sum of my position right here. This is exactly Velasco, Medina. He was not deportable. Some of your position on Velasco, Medina is to not consider the second part of it. If that's wrong, if that needs to be considered, then what? I guess I'm not following what you mean when you say it has to be considered. It was a factually distinct situation. Velasco, Medina was a year later, so EDPA did apply. This was a year earlier, so it didn't apply. And that's why I'm saying that that prong simply – But that isn't the problem anyway. Not really, no. Because – That doesn't make any difference. No. The only real distinction – I mean, the fact that Velasco was sandwiched between the two is kind of an irrelevance as far as this is concerned. I believe so, yes. So, again, the bottom line is what do we mean in understandable terms about a vested right? Our defendant could not have had a vested right in relief which is purely contingent upon a possibility that the government might change the rules somewhere down the line. That's not what St. Cyr says. St. Cyr says that he had a vested right because of his expectations at the time that he changed his plea, and then the government came around later, changed the rules, and tried to apply that retroactively. That's not this case. So – and, again, I would really like to emphasize that I don't think that this whole other theory is even appropriately before the court, because it was never suggested that the potential crimes of moral turpitude, deportability, was even in the case until it was raised in the objection to the magistrate's order. So the government was not in a situation where it could address that, find out factually whether that was even an applicable kind of approach. The district court immediately adopted the magistrate's recommendations and did not request any kind of response, so we don't know whether he did it based on the fact that he simply agreed with the merits of the magistrate's finding and thought that the crimes of moral turpitude theory was irrelevant or because it was raised lately. An objection is not a place to inject a whole new theory in a case. It's to talk about, well, Judge, you mistook this fact that was in the record already or this theory that we argued, but it's not an occasion to raise something entirely new, and then on top of that, you double the waiver by the fact that it was not even meaningfully presented in the brief. It was alluded to as kind of a historical fact in the statement of the case, but there was no meaningful argument of this, well, he should have been told about this crime of moral turpitude which only he knew about. That was never meaningfully argued. It was an evolving theory. I'm sorry? It was an evolving theory. Well, perhaps, but there has to be some point at which you are bound to the theory that you are presenting, and his theory throughout the case was simply, I should have been told about this hypothetical possibility that somewhere down the line, somebody might change something, and then I might be told. Well, let's say he had been told that. What could he have done about it? Well, again, it's purely hypothetical. If he had been told. Well, let's say that I.J. had been particularly canny and had said all the things we can now put in his mouth to have said, and the future would have been laid bare to the petitioner here, or the appellant. What could he have done if he had known more, suspected more? There he is. He's just been ordered removed, right? And what? Well, presumably, if he'd been told that, he would have then made a judgment about whether or not he wanted to attempt to pursue that relief, the 212C relief based on this new theory of crimes of moral turpitude. And the I.J. would then presumably not have told him that there was no grounds. He could have pursued the relief. I'm sorry? He could have pursued the relief as to the one burglary for which he was being removed. I guess you can always file a petition. There's no prohibition against it. That's, yeah. In theory, the mechanism is there. But whether he would have made that choice and, again, whether there were even exactly facts to support it. Let's assume he had done everything he now wishes he had done, and he had been told everything he now claims he should have been told. How would that have played out? The I.J., I guess, would have said, under this theory, there is potentially a 50-50 chance that you'll get relief. And, therefore, he would have had to make a judgment whether it was plausible for him to do that or whether he was just going to cash in and waive his appeal as he did. That's the difficulty with this theory, is that we are asked to grant relief on a whole set of hypothetical what-ifs, you know, if this had been done and if this had been done. But the bottom line is that he was not deportable, and so Velasco Medina says he had no right to expect to be informed that there was 212C relief. And so the I.J. did exactly what he was supposed to have done, told him, under the only theory that is in front of me, the only basis for your deportation which was set out in the notice of appearance, this is what your options are. And he did it exactly right. Okay.  So tell me, if everything had happened the way you now say it should have happened, what could or would the I.J. have said and what could or would your client have done? Well, Your Honor, if Mr. Leon Pass had been advised, and I guess at the time he advised all that an immigration judge might have given, it's something along the lines of the law is unsettled, you may apply for this, I may preterminate your application, and you can appeal me to the BIA. I'm sorry? You may appeal me to the BIA. Judges may very well say the law on this is unsettled as to whether you get 212C. You can go ahead and apply for it. I'm going to rule against you, but you have that issue. But remember, at that point, the only thing the I.J. knows about is the one verbally, right? Correct. Would your client have to say, oh, by the way, Judge, you should know that I'm also guilty of these other things? If it was just in that one ---- I'm sorry. I'm just wondering how ---- If it was just in the one verbally, again, it's the argument in my reply brief, basically, that he was not then reportable at the time that he entered his guilty plea, then it would be a motion to terminate proceedings based on the fact that the person is not an alien who can be removed from the country. And again, the same process would work through. I assume the judge would say this may be something that may work. I'm going to rule against it right now because I think that the statute is retroactive, but you now have an issue to take to the Board of Immigration Appeals. Your attorney has an issue to take to the Board of Immigration Appeals. And just briefly, Your Honor, I ---- And what would have happened then? The Board of Immigration Appeals, you know, well, then he would have made a ---- Mr. Levenplatz could have made a knowing, intelligent, voluntary decision as to whether to waive or to appeal. I understand. Let's say he had made the other decision. He had said, okay, well, futile though it be, I apply. So if you apply ---- And then I.J. says, okay, denied. Keep talking. Okay. It goes to the BIA. The BIA would deny his application. After they stop laughing, then. And then under Rondau v. Ashcroft, he doesn't have the right to appeal to the Ninth Circuit. He would not have a right to appeal from that, from the BIA's decision. Okay. So he'd be back. He'd still be in the same pickle. I don't ---- I'm trying to figure out. Your entire claim hinges on the fact that he was not informed and, therefore, he gave up rights that he ---- that he otherwise could have exercised. And I'm trying to figure out, okay, let's say everything was done well. Where would he now be? What would that have meant to him? Well, depending on when the BIA ruled on his case, I guess St. Cyr could have come down before and then he would have received a remand. If he had been before, the BIA would have probably ruled against him and then ---- But that's the question, isn't it? The question is whether this is covered by St. Cyr. You mean this case? Yes. Right. This case is. What I mean is if his immigration case had continued, the BIA may not have ruled on it until 2001. I see. And when did St. Cyr come down? 2001. June of 2001. And when was the hearing before the IJ? October of 97. I don't know how the BIA was running those days, but that sounds ---- Well, he was in custody at the time and serving a state prison sentence. I don't know if he would have been able to make bond and be released. And if he was out of custody, then the BIA could take a lot longer to decide his case. So I really couldn't tell you when they would have decided, because I don't know if he would have been able to make an INS bond and be released to his family here. If he had not made bond, then the case would have gone a lot quicker and probably been done in about a year. But if he had made bond and been out of custody, that would be a different story, and the case can drag on for a long time. And, Your Honor, just briefly on the ---- as I mentioned about the reporting recommendation, which is the first time that it raised the two crimes of moral That happened because no one had mentioned that issue before, neither the government nor itself. It was something that the magistrate picked up on, decided to rule on that basis. And so my only avenue to answer to that was through my objections to the R&R. Excuse me. I think you're out of time. Okay. Thank you, Your Honor. Any cases are you can submit it.
judges: Kozinski, Fernandez, Rymer